IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHARON JOHNSON, | ) | CASE NO. 1:07 CV 1610 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| CLEVELAND CITY SCHOOL | ) | |
| DISTRICT, et al., | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| Defendant. | ) | |
| | ) | |

This case is before the Court on Defendants' Motion for Summary Judgment. (ECF #197). Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants, Cleveland City School District, Inc., Donna Bowen, Clinton Faulkner, and Sharon McDonald ("Defendants"), have petitioned the Court for summary judgment dismissing Plaintiff, Sharon Johnson's claims, which stem from allegations of discrimination based on disability. For the reasons set forth below, Defendants' motion is GRANTED.

**Procedural and Factual Background**[1]

Plaintiff Sharon Johnson ("Plaintiff") filed the instant action against her former employer, Cleveland City School District ("Cleveland City Schools") in May of 2007. The Complaint was amended in September of 2007, adding the individual party defendants. (ECF #1, 19). In the First Amended Complaint ("Complaint"), Dr. Johnson claims that she was fired from her position at the Cleveland City Schools in violation of Title I of the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. §2000e-5, and in violation of Chapter 4112 of the Ohio Revised Code. She also asserted claims for breach of contract and the intentional infliction of emotional distress. Dr. Johnson is seeking reinstatement, back pay, compensatory damages, punitive damages, and attorney fees and costs.

The Defendants filed a Partial Motion for Judgment on the Pleadings seeking dismissal of the contract claim. (ECF #37). The Court granted that motion, finding that it lacks subject matter jurisdiction over the contract claim, and dismissing Count Three of the First Amended Complaint. (ECF # 46). Defendants subsequently filed another Partial Motion for Judgment on the Pleadings seeking dismissal of any claims relating to a Counselor Position at the school. The Court denied this motion on the grounds that no such claim had been presented in the First Amended Complaint. (ECF #191). Following this ruling, and after the close of fact discovery, Plaintiff filed a motion to again amend the complaint – in part to address the Court's prior Order with regard to a Counselor's position – and filed a motion for clarification of that Order. (ECF #192, 193). These motions were

---

[1] The factual summary is based upon the parties' statements of facts. Those material facts which are controverted and supported by deposition testimony, affidavit, or other evidence are stated in a light most favorable to Plaintiff, the non-moving party.

denied. (ECF non-document Orders docketed 8/4/08).

Following an extended and rather contentious period of discovery, the Defendants have now filed a Motion for Summary Judgment seeking dismissal of the remaining claims in the First Amended Complaint. (ECF # 197). Plaintiff filed her response, (ECF #199), and the Defendants filed a brief in reply. (ECF # 200). The matter is now fully briefed and ready for disposition.

On September 14, 2006, Plaintiff filed a charge of discrimination with the Ohio Civil Rights Commission ("OCRC"). The charge included the following claim:

> On August 25, 2006, I was: asked by Ms. Donna Bowen to report to the administration building for a meeting with Mr. Clinton Faulkner. During the course of this meeting Mr. Faulkner stated that the ADA classroom restrictions that had been established for me on September 12, 2002 with the Cleveland Municipal School District, at the request of the school district's doctor, which allowed me to teach small groups of children (8), would no longer be honored by the new administration, and that I should be placed in a classroom setting by my principal immediately.

This was the only allegation in the September 14, 2006 charge. (SJ Response, Ex. 26).

At the time this first charge was filed, Dr. Johnson had on file, a list of accommodations suggested by Dr. Bray, a physician who reviewed her at the school district's request to establish her fitness for duty. Dr. Bray indicated in a letter addressed to Adrian Thompson, Esq. of the Labor Relations Department of the Cleveland Municipal School District that Dr. Johnson would be able to work on virtually all work days with certain accommodations. Dr. Bray suggested: (1) no standing for more than one hour per day; (2) no continuous speaking; (3) alternate sitting, standing and walking; (4) minimal stairs; and, (5) use of ambulatory aids, as needed. (SJ Response, Ex. 10).

There was no recommendation that she teach only small group classes, or any indication that she could not teach a full size class, using the recommended accommodations. (SJ, Ex. 1, Pl. Depo. at 82; Ex. 4). Dr. Johnson did not allege in her charge that any of the specific

-3-

accommodations recommended by Dr. Bray had been denied, or that they could/would not be addressed in the classroom setting to which she had been assigned.

On August 30, 2007, the Plaintiff filed a second charge of discrimination with the OCRC. In the second charge, the Plaintiff alleged as follows:

> On 9/12/06 I filed my original discrimination complaint with the OCRC. On 5/31/07 I filed a law suite [sic] against the Cleveland Municipal School District. On 8/22/07 my employment was terminated in retaliation of my filing of the two prior actions against Cleveland Municipal School District.

These were the only facts alleged in the second charge. (SJ Response, Ex. 49). This charge contained no factual allegations relating to a "failure to accommodate" claim.

Plaintiff's Complaint alleges that she is a "qualified individual with a disability" as defined in 42 U.S.C. §1211(8) and Chapter 4112 of the Ohio Revised Code. (Complaint ¶ 10). She was hired by the Cleveland City Schools on or about October 1, 1989. (Complaint ¶ 15). On August 25, 1993, she was diagnosed with cervical myelopathy. (Complaint ¶ 16). She claims that from 2002 to 2006 the school provided her with "reasonable accommodations," allowing her to teach a small group classes. In the summer of 2006, a new administration began at the District. (SJ Ex. 1, Pl. Depo. 46-47, 56). The new administration eliminated small group regular education classes, and reassigned Dr. Johnson to teach a full sized classroom on the second floor. . (SJ Ex. 9; Ex. 14; Ex. 2 Interrog. Nos. 1, 6; Ex. 3, Interrog. Nos. 1, 2)

Dr. Johnson claims that she was not able to teach in the classroom she was assigned. She complained of heat and humidity in the classroom, added stress from managing the older (8th grade) students, and exhaustion from having to utilize the stairs multiple times a day in order to escape the heat and humidity by taking breaks on the lower floor of the building. (SJ, Ex. 1, Pl. Depo. 76-80, 84-88). After less than two days of teaching, she left the classroom claiming to be

ill. She did not return to teach the class until January of 2007. (SJ, Ex. 1, Pl. Depo. 85-88, 96-97). During the remainder of the 2006/2007 school year, Dr. Johnson taught less than one full period class on her own (in January), and assisted another teacher with a different class for five days (in February). (SJ Ex. 1, Pl. Depo. 112, 160-161). She was terminated on August 22, 2007.

## Summary Judgment Standard

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be

evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252.

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## **Analysis**

Under the Americans With Disabilities Act ("ADA"), before a Plaintiff can bring a

-6-

lawsuit for discrimination, she must exhaust her administrative remedies by filing a charge with the Equal Employment Opportunity Commission ("EEOC"). 29 U.S.C. §626(d), (e). If the EEOC chooses to bring an action to enforce an employee's right, the employee loses her private right of action. 29 U.S.C. §626(c)(1). If, however, the EEOC dismisses, or otherwise terminates the proceedings, an individual plaintiff has 90 days after receiving notice of the dismissal, to bring a civil action in federal court. 29 U.S.C. §626(e).

The Sixth Circuit has interpreted this requirement to mean that a federal complaint is "limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004)(quoting *Weigel v. Baptist Hospital of East Tennessee*, 302 F.3d 367, 380(6th Cir. 2002). In defining this scope, "the facts alleged in the body of the EEOC charge . . . are the major determinants of the scope of the charge." *Id.*

Dr. Johnson's first complaint was filed with the OCRC on September 14, 2006.[2] The charge included the following claim:

> On August 25, 2006, I was: asked by Ms. Donna Bowen to report to the administration building for a meeting with Mr. Clinton Faulkner. During the course of this meeting Mr. Faulkner stated that the ADA classroom restrictions that had been established for me on September 12, 2002 with the Cleveland Municipal School District, at the request of the school district's doctor, which allowed me to teach small groups of children (8), would no longer be honored by the new administration, and that I should be placed in a classroom setting by my principal immediately.

The EEOC issued Dr. Johnson a "right to sue" notice on this charge on March 1, 2007.

---

[2] The charge has an original receipt time stamp showing a date of August 29, 2006. However, the charge was not signed and notarized until September 12, 2006. A second time stamp of receipt shows a September 14, 2006 date.

-7-

(Amended Complaint, Ex. 2).[3]  Dr. Johnson then filed this action on May 31, 2007.

The scope of the EEOC investigation, therefore would reasonably be limited to the charge that she would not be allowed to teach small group classes any longer, and the implication that placement in a classroom setting would be a violation of her doctor's recommended restrictions.  There is no evidence, whatsoever, that either of these claims could be supported.  Based on Dr. Johnson's own testimony, she claims that she could teach a full classroom.  (Johnson Aff. ¶ 34).   Further, Dr. Johnson's expert, Dr. Bray, testified that she was capable of teaching in a full classroom (even on the second floor) given proper accommodations.  (SJ, Ex. 15, Dr. Bray Depo. 56-57 ,60).

At the time Dr. Johnson filed her charge (and continuing through at least January 23, 2007), the only accommodations that Dr. Johnson had officially requested and supported with a medical statement from a doctor were:   (1) no standing for more than one hour per day; (2) no continuous speaking; (3) alternate sitting, standing and walking; (4) minimal stairs; and, (5) use of ambulatory aids, as needed.  (SJ Response, Ex. 10).  There was no recommendation that she could only teach small group classes; there was no recommendation that she could not teach in a full classroom setting, assuming the listed accommodations were available; and there was no claim that the specific accommodations listed by Dr. Bray were not being addressed.  Further, due to the nature of Dr. Johnson's alleged disability, not every accommodation would be necessary every day.

---

[3] Although the parties do not dispute that Dr. Johnson was issued a "right to sue" notice for her September 14, 2006 charge, there has been no evidence submitted to show that the "right to sue" notice signed by the EEOC correlated to that September 14, 2006 OCRC charge.

Dr. Johnson provides no evidence whatsoever that she was denied accommodations for her standing, sitting, walking, use of ambulatory aids, or continuous speaking restrictions. She also fails to provide any evidence that she was required, by virtue of her job requirements, to engage in more than "minimal stairs" climbing. Dr. Johnson does claim that she effectively overused the stairs in order to escape the heat and humidity of her classroom during breaks, but there is no evidence to suggest that she was required to use the stairs more than once a day in order to fulfill the obligations of her teaching assignment. There is also no evidence that at the time these complaints were made she had explained that a sensitivity to heat and humidity was related to her claimed disability,[4] or that she had provided any medical support for an accommodation based on these factors.[5] Dr. Johnson also told the OCRC that the students in the classroom she was assigned were "hard to manage," and that the stress of dealing with them exacerbated her health problems. (SJ, Ex. 19, p. 1). However, again, there is no evidence that she had made this argument to the proper officials at the school district,. Further there is no evidence that any doctor had indicated at that time that stress would exacerbate her claimed ADA disability, or that any doctor had recommended restrictions based on stress levels, which

---

[4] Dr. Johnson testified in her deposition that she once asked the custodian to cool off her classroom, and once stated to a Dr. Shabazz that the room was hot. This does even approach the necessary level or clarity of communication required to make an official request for an accommodation due to a disability. (SJ, Ex. 1, Pl. Depo. 110-11).

[5] The first medical opinion offered to indicate that Dr. Johnson required an accommodation to avoid extreme hot, humid or cold temperatures was dated January 23, 2007. The school district's doctor who performed Dr. Johnson's "fit for duty" exams did not suggest such an accommodation until February 8, 2007.

-9-

could vary from class to class, student to student, and day to day.[6]  Therefore, there is no evidence that Dr. Johnson was denied any properly requested, reasonable accommodations, at the time she filed her OCRC/EEOC charge, or by the time that charge had been evaluated.

To the extent that Dr. Johnson may be claiming that she was denied accommodations that were requested after January 11, 2007 (the final determination of her OCRC charge), or that previously requested accommodations were not honored after that date, she has not exhausted her administrative remedies as required under 29 U.S.C. §626(d), (e).  She has not filed an OCRC/EEOC charge for disability discrimination, based on a failure to accommodate, for any alleged adverse employment actions after that date.  Therefore, the Court does not have subject matter jurisdiction over any such claims.

Dr. Johnson did, however, file a retaliation claim with the OCRC/EEOC after the filing of the First Amended Complaint.  In her Amended Complaint, and in her 2007 charge to the OCRC, Dr. Johnson claimed that her eventual termination from the school district was retaliation for her filing of the first OCRC charge and for filing the original Complaint in this action.  There is no evidence to support this claim.

In order to make a prima facie case of retaliation, a Plaintiff must show that: (1) she engaged in protected activity; (2) the protected activity was known to the Defendant; (3) the Defendant, thereafter, took adverse action against the Plaintiff; and (4) there was a causal connection between the protected activity and the adverse action.  *Morris v. Oldham County Fiscal Court*, 2001 F.3d 784, 792 (6th Cir. 2000).  The Plaintiff bears the burden of persuasion in

---

[6] Further, if avoiding the stress of dealing with "hard to manage" students were a required accommodation, no reasonable person could find that she was qualified with or without accommodations to teach K-8 students in an urban public school.

-10-

establishing each of these elements. *Id*. at 782. In this case, the Plaintiff has provided no evidence which would establish a causal connection between the protected activity and the adverse action of termination.

There is absolutely no evidence of any retaliatory motive behind the school district's decision. The evidence shows that for approximately a full year after filing the OCRC/EEOC charge, eight months following the resolution of her OCRC/EEOC charge, and three months following the filing of this lawsuit, the school district continued to pay Dr. Johnson her full salary, (SJ, Ex. 1, Pl. Depo. 98), continued to provide benefits, (Id.), continued to meet with her regarding possible job assignments, (SJ Ex. 9, Ex. 11), and continued to correspond with her regarding her requested accommodations, (SJ Response, Ex. 41, 42, 46). Further, the time between Dr. Johnson's engagement in the protected activity and her termination is too remote to establish an inference of causation. "The mere fact that she was eventually terminated after having filed a complaint . . . does not justify an inference that there is a causal connection between the two events." *Thornton v. Federal Express*, 2008 WL 2492280 (6th Cir. June 6, 2008); *see also, Reeves v. Digital Equipment Corp*., 710 F.Supp. 675, 677 (N.D. Ohio 1989)(finding three months between protected activity and adverse action too remote to establish an inference of causation); *Brown v. A.S.D. Computing Center*, 519 F.Supp. 1096, 1116-17 (S.D. Ohio 1981)(finding a four month span to be too remote); *Kipp v. Missouri Highway and Transportation Commission*, 280 F.3d 893 (8th Cir. 2002)(finding a two month separation was too remote). There is simply no evidence that has been presented to this Court upon which a jury could reasonably find that Dr. Johnson was terminated in retaliation for filing charges with the OCRC, or for filing this lawsuit against her employer.

-11-

In so far as Dr. Johnson may have presented evidence sufficient to create a question of fact as to whether her termination stemmed from direct discrimination on the basis of her disability, that question is not before this Court.  Dr. Johnson did not allege in her OCRC charge, or in her First Amended Complaint that her termination was based directly on disability discrimination, or a consequence of a failure to accommodate claim.  She alleged only retaliation.  Therefore, this Court is without jurisdiction to address the possibility of other illegal reasons for her termination.

## Conclusion

For the reasons set forth above, Defendants' Motion for Summary Judgment is GRANTED.  Pursuant to Fed. R. Civ. Pro. 56, Count One of Plaintiff's First Amended Complaint is hereby dismissed with prejudice for lack of evidence and/or lack of subject matter jurisdiction.  Having dismissed the only federal claim in the Complaint, the Court declines to exercise pendant jurisdiction over the remaining state claims.  Counts Two, Four, and Five are, therefore, dismissed without prejudice.  Nothing in this Memorandum Opinion and Order should be construed to prevent Dr. Johnson from re-filing her state claims in an appropriate Ohio court to the extent such claims are permitted under Ohio law.   IT IS SO ORDERED.

   /s/Donald C. Nugent  
DONALD C. NUGENT  
United States District Judge

DATED:  November 25, 2008