IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| SHARON JOHNSON, | ) | CASE NO.  1:07 CV 1610 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| CLEVELAND CITY SCHOOL | ) | |
| DISTRICT, et al., | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| Defendant. | ) | |
| | ) | |


This case is before the Court on Defendants' Motion for Summary Judgment.  (ECF

#197).  Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants, Cleveland City

School District, Inc., Donna Bowen, Clinton Faulkner, and Sharon McDonald ("Defendants"),

have petitioned the Court for summary judgment dismissing Plaintiff, Sharon Johnson's claims,

which stem from allegations of discrimination based on disability.  For the reasons set forth

below, Defendants' motion is GRANTED.

## **Procedural Background**[1]

Plaintiff Sharon Johnson ("Plaintiff") filed the instant action against her former employer, Cleveland City School District ("Cleveland City Schools") in May of 2007.  The Complaint was amended in September of 2007, adding the individual party defendants. (ECF #1, 19). In the First Amended Complaint ("Complaint"), Dr. Johnson claims that she was fired from her position at the Cleveland City Schools in violation of Title I of the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. §2000e-5, and in violation of Chapter 4112 of the Ohio Revised Code.  She also asserted claims for breach of contract and the intentional infliction of emotional distress.  Dr. Johnson is seeking reinstatement, back pay, compensatory damages, punitive damages, and attorney fees and costs.

The Defendants filed a Partial Motion for Judgment on the Pleadings seeking dismissal of the contract claim.  (ECF #37).  The Court granted that motion, finding that it lacks subject matter jurisdiction over the contract claim, and dismissing Count Three of the First Amended Complaint.  (ECF # 46).  Defendants subsequently filed another Partial Motion for Judgment on the Pleadings seeking dismissal of any claims relating to a Counselor Position at the school.  The Court denied this motion on the grounds that no such claim had been presented in the First Amended Complaint.  (ECF #191).  Following this ruling, and after the close of fact discovery, Plaintiff filed a motion to again amend the complaint – in part to address the Court's prior Order with regard to a Counselor's position –  and filed a motion for clarification of that Order.  (ECF

---

[1]

Any factual summary contained in this section are based upon the parties' statements of facts.  Those material facts which are controverted and supported by deposition testimony, affidavit, or other evidence are stated in a light most favorable to Plaintiff, the non-moving party.  Additional necessary facts will be addressed in the Analysis section, and the same standard will be applied to those factual allegations.

#192, 193).   These motions were denied.  (ECF  non-document Orders docketed 8/4/08). [2]

Following an extended and rather contentious period of discovery, the Defendants filed a Motion for Summary Judgment on all counts (ECF #197), which this Court granted.  Plaintiff appealed the decision, and the Sixth Circuit affirmed the judgment in part, reversed the judgment in part, and remanded the case for further proceedings consistent with its opinion.    (ECF #237, 247).  The Sixth Circuit upheld the dismissal of all claims alleging a failure to accommodate prior to January 11, 2007, and the dismissal of the Plaintiff's retaliatory termination claim.   In addition to dismissing those claims, this Court had dismissed Plaintiff's claims for failure to accommodate (arising after January 11, 2007) and discriminatory discharge on the grounds that they were not properly exhausted by Plaintiff's OCRC/EEOC charges.[3]  The Sixth Circuit found that these claims were properly exhausted prior to being raised in the federal court Complaint.  The Court of Appeals also found that a claim for retaliatory denial of accommodations reasonably arose out of the allegations made in the Plaintiff's second OCRC/EEOC charge, even though such a claim was not directly included in the charge, and was not referenced in the fact section of her charge.  These three claims were remanded to this Court for further consideration.

During the pendency of the appeal, the Plaintiff filed a lawsuit in the Cuyahoga County Court of Common Pleas alleging violations of Ohio's anti-discrimination law based on the same facts and issues alleged in the prior federal action.  On October 27, 2009, the Court of Common Pleas granted Defendant's Motion for Summary Judgment, dismissing all of Plaintiff's state law

---

[2]  The Court of Appeals affirmed the denial of Plaintiff's request to amend. (#237).

[3]

Having dismissed the federal claims, the Court declined to exercise pendant jurisdiction over the corresponding state claims.

claims.  Plaintiffs have appealed that decision to the Ohio Court of Appeals.

Based, in part, on the state court dismissal, the Defendants have filed an Amended Motion for Summary Judgment, seeking a dismissal of all of the remanded claims.  (ECF #263). Defendants argue that the claims are both substantively meritless, and precluded under the doctrine of res judicata/collateral estoppel.   Further, Defendants argued that Plaintiff did not address the substantive arguments in the their Motion for Summary Judgment, and that those issues, therefore, should be treated as uncontested.  Plaintiff filed a Response in Opposition to Defendants' original Motion for Summary Judgment addressing the substantive issues, and though she did not re-file these arguments in response to the Amended Motion for Summary Judgment, the Court will treat the arguments as if they had properly been included in the subsequent Opposition to the Amended Motion for Summary Judgment.  (ECF #260).  Further, Plaintiff filed a Response to the Amended Motion for Summary Judgment, addressing the new res judicata issues.  The Response argues that collateral estoppel should not apply because the state court's decision was too short and conclusory to show that Plaintiff's arguments opposing summary judgment had been fully and fairly considered.  (ECF #266).

**Summary Judgment Standard**

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56©.  The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions

-4-

of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)).  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards.  The court will view the summary judgment motion in the light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252).  Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.  *Anderson*, 477 U.S. at 249-50 (citations omitted).  In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict."  *Id.* at 252.

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover.  The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury."  *Cox v. Kentucky Dep't*

-5-

*of Transp.*, 53 F.3d 146, 149 (6ᵗʰ Cir. 1995).  FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate.  *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson*, 477 U.S. at 250.

## Analysis

The only cause of action remaining before this Court on remand from the Sixth Circuit, is Plaintiff's First Cause of Action, which alleges simply that the Defendants are in "violation of the ADA."  The Sixth Circuit specifically held that this Court "erred in limiting Johnson's claims" when it originally dismissed the case on summary judgment and, and it "reversed and remanded for further consideration... Johnson's claims of failure to accommodate, retaliatory denial of accommodations, and discriminatory discharge."

In so far as the Court of Appeals decision specifically found that a separate cause of action for retaliatory failure to accommodate was sufficiently exhausted by the Plaintiff's second OCRC/EEOC charge, it is necessary to point out that no such claim was made in the First Amended Complaint in this action.[4]  The First Amended Complaint sets forth one general and

---

[4] This Court indicated as such on page 10 of its prior Memorandum and Opinion granting

-6-

very vague claim in Count I, alleging that the Defendants violated the ADA.  Count One does not specifically mention or differentiate between discrimination, discriminatory discharge, retaliation, retaliatory discharge, failure to accommodate, or retaliatory failure to accommodate. The allegations in the fact section of the Second Amended Complaint, read liberally, sufficiently support claims for discriminatory discharge and retaliatory termination (First Amended Complaint ¶ 21), and failure to accommodate (First Amended Complaint ¶¶ 17, 19, 20).  It makes no allegations that would fairly notify the Defendants that they were also to defend against a claim of retaliatory failure to accommodate.[5]  Therefore, no claim for retaliatory failure to accommodate is part of this action, and no disposition on such a claim is possible or proper, regardless of whether the issue was presented in the OCRC/EEOC charges filed by the Plaintiff.[6]

---

Summary Judgment.  (ECF #211).  The Court also indicated in that portion of the opinion that the First Amended Complaint did not state a claim for discriminatory discharge. While the Court believes that this is an accurate statement based on the vague assertions and the factual allegations set forth in the First Amended Complaint, based on the Sixth Circuit's liberal reading of the OCRC/EEOC charge in its Opinion, the Court will adopt an equally liberal reading of the allegations in the Complaint for purposes of this Opinion. In doing so, the Court will accept that a claim of discriminatory discharge could be inferred from the allegations in Paragraph 21 of the First Amended Complaint.  No degree of leniency in the reading of the First Amended Complaint, however, could lead a reasonable person to believe that a claim for retaliatory failure to accommodate was intended or fairly raised in the First Amended Complaint.

[5]

The allegations in the First Amended Complaint were that accommodations were requested, that they were originally provided, that on September 2, 2006 (before any charge was filed with the OCRC/EEOC) accommodations were withdrawn, and that on or about February 26, 2007, Plaintiff was put on forced medical leave.  (First Amended Complaint ¶¶ 17, 19, 20).  There were no allegations or claims that the Defendants failed to accommodate Plaintiff's alleged disability because she filed charges or otherwise sought to enforce her legal rights.

[6]

Even if the Court were to consider such a claim, there is absolutely no evidence that would indicate that any alleged failure to accommodate was motivated by retaliation for

The Court will address the claims of failure to accommodate (post January 11, 2007), and discriminatory discharge below.[7]

I. Collateral Estoppel

Defendants argue that Plaintiff's claims should be dismissed pursuant to the doctrine of collateral estoppel. "[T]o establish the defense of collateral estoppel under Ohio law, a party must prove that (1) the party to whom estoppel is sought was a party to or in privity with a party in the prior action; (2) there was a final judgment on the merits in the previous case after a full and fair opportunity to litigate the issues; (3) the issue must have been tried and decided and

---

Dr. Johnson's protected activity.  Dr. Johnson has alleged that the school district removed her accommodations in August of 2006.  According to Dr. Johnson, no satisfactory accommodations were made for her alleged disability from that point forward.  She did not file an OCRC/EEOC charge, or engage in any other protected activity until after her prior accommodations were "revoked."  Therefore, there is no evidence of causation, or inference that can be made that would support a claim that any alleged failure to accommodate motivated by retaliation for her protected activity.

[7]
  Plaintiff has also filed a Motion to Reconsider Retaliation Claim Based Upon US Supreme Court Ruling, arguing that the case of *Crawford v. Metropolitan Government of Nashville and Davidson County*, Tennessee, No. 065-1595, decided January 26, 2009, "drastically changes the elements of proof in retaliation cases." (ECF #267).   The Sixth Circuit upheld this Courts dismissal of the retaliation claim in Plaintiff's case.  *Crawford* was decided after the Plaintiff's  "original brief" was filed in the Sixth Circuit appeal, but eight months before the Sixth Circuit issued its opinion affirming this Court's dismissal of that claim.  Therefore, the case was available to counsel, and could have been addressed through a Notice of Additional Authority in support of the Plaintiff's position on appeal. More importantly, however, *Crawford* has no substantive impact on the dismissal of Plaintiff's retaliation claim.  Crawford did not change the elements of proof required in retaliation claims.  Rather, it merely addressed a single element – whether the plaintiff engaged in protected activity – and held that compliance with an internal investigation is a protected activity under 42 U.S.C. 2000e.  *Crawford* did not address or change the causation element of a retaliation claim, which was the basis for the dismissal of Plaintiff's claim.  Plaintiff's Motion for Reconsideration is, therefore, DENIED.

-8-

must be necessary to the final judgment; and (4) the issue must be identical to the issue involved in the prior suit." *Gen. Medicine, P.C. v. Morning View Care Centers,* 477 F. Supp. 2d 858, 863 (S.D. Ohio 2006)(quoting *Firestone v. Galbreath*, 895 F. Supp. 917, 922 (S.D. Ohio 1995)).

Although the parties did not include their briefs from the state court's summary judgment proceedings, it appears from looking at the materials on the docket for the Cuyahoga County Court of Common Pleas that arguments very similar to the ones made in this case were presented and fully briefed to the state court.  It also appears, however, that one of the grounds possibly set forth in the motion for summary judgment was an argument that the state claims be dismissed under the theory of res judicata based on this Court's prior order dismissing the federal claims. As the Court cannot tell from the decision of the state court what issues were decided and what grounds the state court relied on in dismissing the state claims, there is insufficient evidence upon which to find that the issues remanded for this Court's consideration were tried, decided and were necessary to the final judgment in the state court.   The Court, therefore, declines to dismiss the federal claims on the basis of collateral estoppel.

II.  Failure to Accommodate

To establish a prima facie case for failure to accommodate under the ADA, an employee must show that: (1) she has a disability; (2) she is otherwise qualified for her position; (3) that she requested an objectively reasonable accommodation; and, (4) the employer refused to make a reasonable accommodation.  *See, Cassiday v. Detroit Edison Co.*, 138 F.3d 629, 633-34 (6th Cir. 1998); *Grant v. Wilson Sporting Goods Co.*, 143 F.3d 1042 (6th Cir. 1998); 42 U.S.C. §12101(2).

An employee's disability claim should be dismissed if the employee failed to identify and request a reasonable accommodation.  *Tubbs v. Formica Corp*., 107 Fed.Appx. 485 (6th Cir. 2004); *Hankins v. The Gap, Inc.*, 84 F.3d 797, 802 (6th Cir. 1996)(citing 29 C.F.R. §1630.9(d)).

Plaintiff has established, at a minimum, that there exists a genuine issue of fact as to whether she has a recognized disability, and whether she is otherwise qualified for her position. She, however, has not established that she requested an objectively reasonable accommodation that would address her alleged disability, which the employer refused.

Plaintiff's Complaint alleges that she is a "qualified individual with a disability" as defined in 42 U.S.C. §1211(8) and Chapter 4112 of the Ohio Revised Code.  (Complaint ¶ 10). She was hired by the Cleveland City Schools on or about October 1, 1989.  (Complaint ¶ 15). On August 25, 1993, she was diagnosed with cervical myelopathy. (Complaint ¶ 16).   She claims that from 2002 to 2006 the school provided her with "reasonable accommodations," allowing her to teach a small group classes.  In the summer of 2006, a new administration began at the District.  (SJ Ex. 1, Pl. Depo. 46-47, 56).   The new administration eliminated small group regular education classes, and reassigned Dr. Johnson to teach a full sized classroom on the second floor.  (SJ Ex. 9; Ex. 14; Ex. 2 Interrog. Nos. 1, 6; Ex. 3, Interrog. Nos. 1, 2)

Dr. Johnson claims that she was not able to teach in the classroom she was assigned.  She complained of heat and humidity in the classroom, added stress from managing the older (8th grade) students, and exhaustion from having to utilize the stairs multiple times a day in order to escape the heat and humidity by taking breaks on the lower floor of the building. (SJ, Ex. 1, Pl. Depo. 76-80, 84-88).  After less than two days of teaching, she left the classroom claiming to be ill.  She did not return to teach the class until January of 2007.  (SJ, Ex. 1, Pl. Depo. 85-88, 96-

-10-

97).  During the remainder of the 2006/2007 school year, Dr. Johnson taught less than one full period class on her own (prior to January 11, 2007), and assisted another teacher with a different class for five days (in February of 2007).  (SJ Ex. 1, Pl. Depo. 112, 160-161).  She was terminated on August 22, 2007.

Dr. Johnson has provided a letter from her examining physician Dr. Bray, MD, dated September 12, 2002.  The letter outlines "reasonable accommodations" that would address Ms. Johnson's alleged disability.  Those included: (1) no standing for more than one hour per day; (2) no continuous speaking; (3) alternate sitting, standing and walking; (4) minimal stairs; and, (5) use of an ambulatory aid, as needed.

On January 23, 2007, Dr. Johnson obtained a letter from Dr. Shazia Goraya, MD  again outlining "reasonable accommodations" that would address Dr. Johnson's alleged disability.  Those included: (1) no standing for more than one hour without intermittent sitting; (2) alternate sitting, standing and walking; (3) minimal stairs (limited to twice per day); (4) no work environment with extreme hot, humid or cold temperatures; and, (5) use of  ambulatory aids, as needed.

On February 8, 2007, Dr. Bray provided an additional letter updating the restrictions he suggested would be "reasonable accommodations" for Dr. Johnson's alleged disability.  In addition to his earlier recommendations, in this letter he included: "no work environment with extreme heat, humidity, or cold temperatures," and refined his earlier recommendation that she not engage in continuous speaking to say that "[s]he should not be required to verbally control resistant behavior in students that persists after initial warning."

On April 27, 2007, Dr. Johnson obtained yet another doctor's letter, this time from Dr.

Thomas E. Gretter, MD.  His recommendations matched the recommendations from the other two doctors, stating that Dr. Johnson (1) should not stand for more than one hour, (2) should alternate standing, sitting, and walking, (3) should engage in minimal stair climbing, (4) should be allowed use of ambulatory aid "in extreme circumstances," (5) should work in an environment free of extreme heat, humidity, and cold, and, (6) that she be not required "to verbally control resistive students."

Plaintiff claims that, by virtue of submitting the above letters she requested the following accommodations:

      a.    a work environment free of extreme heat, humidity, and cold/climate controlled classroom;
      b.    no standing for more than one hour per day;
      c.    alternate sitting, standing;
      d.     minimal stair climbing;
      e.    ambulatory aids such as cane or scooter in extreme circumstances; and,
      f.    that she not be required to verbally control persistently resistive students.

She also argues that the following accommodations should have been provided by the school district:

      g.    an aide assigned to escort her students up and down stairs or to otherwise relieve her with regard to standing, walking, and voice-strain;
      h.    a position as a small group teacher
      I.    a position as a school counselor.

On remand, the Plaintiffs claim for failure to accommodate[8] is limited to her allegations

---

[8]

On August 30, 2007, the Plaintiff filed a charge of discrimination with the OCRC.  In the charge, the Plaintiff alleged as follows:

On 9/12/06 I filed my original discrimination complaint with the OCRC. On 5/31/07 I filed a law suite [sic]  against the Cleveland Municipal School District.  On 8/22/07 my employment was terminated in retaliation of my filing of the two prior actions against Cleveland Municipal School District.

-12-

that the Defendants failed to accommodate her alleged disability from January 11, 2007 until

August 22, 2007 (the date of her termination).  This Court has already dismissed all claims for

failure to accommodate prior to January 11, 2007, and the Court of Appeals has affirmed this

dismissal.  In doing so, both this Court, and the Sixth Circuit noted that Dr. Johnson made no

showing that her disability required, or that she requested, accommodation freeing her from

extreme temperatures and humidity, assigning her to teach only small classes, or hiring her as a

counselor, prior to January 11, 2007.  Although she did present the issue of climate control as a

medical restriction via doctors letters submitted after January 11, 2007, there is no evidence that

any doctor has ever indicated that Dr. Johnson could not teach a full size class provided her other

restrictions were met.  There is absolutely no evidence to show that Plaintiff's disability required

an accommodation assigning her to teach only small groups of students, or assigning her to a

position as a school counselor; this eliminates any claims based on the accommodations set forth

in h - I, above.[9]

_____

Plaintiff also checked a box indicating that she was discriminated against because
of her disability, and she wrote next to that box "Revoked ADA Accommodations.  The
Court of Appeals has held that this was sufficient to exhaust her administrative remedies
with regard to her claim for failure to accommodate.

[9]

   In addition, this Court previously ruled that no claim related to a counselor's position
was alleged in the Amended Complaint.  The Court also denied Plaintiff's request to
further amend the Complaint after the close of discovery and the deadline for amendments
had passed in order to include a claim related to the counselor's position "to conform with
Court's Orders."  (ECF #191, 192, non document dated 8/4/08).  Therefore, any claim that
Defendants failed to accommodate Dr. Johnson by failing to hire her as a counselor is not
properly before this Court.  Further, there is absolutely no evidence that Dr. Johnson ever
submitted an application for a counselor's position at the school.  Although she testified
that she spoke to various people about her interest in such a position, she does not dispute
that she never filed the appropriate application for a counselor's position.

-13-

Dr. Johnson provides no evidence whatsoever that she was denied accommodations for her standing, sitting, walking, use of ambulatory aids, or continuous speaking restrictions.  She also fails to provide any evidence that she was required, by virtue of her job requirements, to engage in more than "minimal stair[s]" climbing.  Dr. Johnson does claim that she effectively overused the stairs in order to escape the heat and humidity of her classroom during breaks, prior to January 11, 2007, but there is no evidence to suggest that she was required to use the stairs more than twice a day in order to fulfill the obligations of her teaching assignment during that time period, or that she was or would have been required to use stairs more frequently had she returned to work in her classroom after January 11, 2007.

There is also no evidence, that had she returned to work after submitting doctors' letters establishing that heat and humidity were a medical issue for her, related to her disability, that she would have been asked to teach in a classroom that was not climate controlled (or on the second floor), thereby requiring her to use the stairs more than twice a day in order to satisfy other conditions of her medical accommodations.[10]  This eliminates any claims based on the allegedly requested accommodations set forth in b-e, and g[11] above, leaving only those accommodations

---

[10]

 In fact, between January 11, 2007 and her termination on August 22, 2007, Dr. Johnson appeared for work a total of only five days.  During those five days (between Feb. 8th and 15th, 2007) she did not teach in her assigned classroom, but did "pullouts", which she describes as pulling children out of another teacher's classroom because there was some controversy about that teacher's ability to manage the classroom effectively.  (R.  187, Johnson Dep. 161-162).   There is no evidence or indication that her work during those five days violated any of the suggested accommodations for her alleged disability, including the restrictions relating to temperature, humidity, or excessive use of stairs.

[11]

 Defendants have provided testimony averring that they did, in fact, assign an employee to escort Dr. Johnson's students up and down the stairs in the event that they had to attend events or report to different floors during their class time with Dr. Johnson.  Dr. Johnson

set forth in "a" and "f" as possible claims. Those two "requested"[12] accommodations - climate control, and freedom from any requirement to verbally control resistive behavior in students, will be addressed in more detail below.

A) <u>Temperature and Humidity Controls</u>

Although Dr. Johnson testified that she would have returned to work as soon as Defendants fixed the temperature controls in her classroom, or offered her another classroom with a working thermostat,[13] there is absolutely no evidence that as of January 12, 2007, the temperature controls in the classroom to which Dr. Johnson was assigned were not in working condition; nor is there any actual evidence that Dr. Johnson asked anyone in authority to address the temperature and climate control issues in order to accommodate her disability after her medical letters were updated to include a restriction against high heat and humidity.[14] There is

---

disputes this testimony, but provides no evidence to support her beliefs on this issue. There is no evidence that Dr. Johnson was ever required to climb the stairs during the middle of the school day for the benefit of her students. Her testimony only indicates that she choose to use the stairs multiple times to relieve herself from the classroom atmosphere, prior to requesting any accommodation related to temperature or humidity levels in her classroom.

[12] The Court makes no finding on whether the submission of the Dr.'s letters setting forth these restrictions is, without more, sufficient to constitute "requesting" the stated accommodation. For purposes of this Opinion, however, the Court will assume that the letters constituted a request for the proposed accommodations.

[13] Further, this admission shows that Dr. Johnson was not lacking any necessary accommodations relative to her restrictions on walking, standing, sitting, managing stairs, ambulatory aids, or speaking.

[14] Plaintiff alleges that she emailed Defendants Faulkner and McDonald about the heat problems after leaving her classroom on January 8, 2007. This was BEFORE she had any verification of a medical need for climate control, however. (Johnson Depo. Ex. R). There is no evidence, whatsoever, however, that the school refused an accommodation based on

-15-

also no evidence that Dr. Johnson checked with anyone in authority at any time after January 11, 2007 to see if those issues had been or could be resolved.

In August of 2007, after taking an extended leave of absence, utilizing her sick time and being paid in full for the duration,[15] Plaintiff was offered three different teaching positions, at least one of which was in a new, air-conditioned building with an elevator.  Plaintiff believed that because these positions were in the classroom, they were not in line with her ADA restrictions.[16]  (Johnson Depo. Pg. 57).  Rather than state a preference for any of the open positions, Dr. Johnson told Ms. Bowen that she wanted a Counselor's position.  There was no indication by either Plaintiff or Defendants that any of these classroom assignments would not satisfy Dr. Johnson's need for a climate controlled room.[17]

climate control (or that Dr. Johnson attempted to address the issue with them) AFTER receiving a medical certification that climate control was a necessary accommodation for her alleged disability.

[15]
 Plaintiff complains that this "sick leave" was imposed by the school district and was against her will.  However, she left the building during the school day claiming illness, did not see a doctor, took an extended time without prior approval before returning for five days, (Johnson Depo. pp. 114-116), and failed to provide a medical authorization, as required by school policy, that would allow her to return to work.  The school took the position that they could not accommodate a restriction that prevented her from verbally controlling resistant behavior in students, and informed her that although all other accommodations could be addressed, this restriction prevented her from being able to fulfill an essential function of her job.  Therefore, as long as this restriction remained medically necessary, she was not allowed to return to work.  Nonetheless, the school district continue to pay her at full salary with full benefits, (Johnson Depo.  p. 98), and attempted to work with her to find a position that she could fill during the following school year.  (Bushley Depo. Ex. 59; DeVita Depo. Ex. 60, pp. 32-22).

[16]
 This is despite the fact that in June of 2007, Dr. Johnson indicated to the school district that she could teach in a classroom if her other restrictions were addressed.

[17]
 The conversation focused on a position at Gracemount.  Prior to accepting the

-16-

In short, there is absolutely no evidence that Dr. Johnson was denied the option/accommodation of working in a climate controlled classroom after January 11, 2007. Any failure to accommodate claim based on this proposed accommodation must, therefore, be dismissed for lack of any evidence in support of the claim.

      B.  <u>Verbally Controlling Resistive Students</u>

As to the suggested accommodations excusing her from verbally controlling resistive students, Dr. Johnson's requested accommodation was not a reasonable accommodation for a teacher or counselor at an elementary school.  It is common sense that disciplining students is an essential function of all positions that work with students.   Even Dr. Johnson had acknowledged that "being able to discipline students is an essential function of a good teacher."  (ECF# 260, p. 17).  Teachers and counselors, whether working with large groups, small groups, or one-on-one, are required to deal with the students in their care, not only when they are quiet and well behaved, but also when they are loud, restless, and possibly belligerent.  It is to be expected that children may need more than "an initial verbal warning" to conform their behavior to class expectations or may be "resistive" and in need of verbal control.  Therefore, teachers, counselors and other adults employed at schools need to be physically, mentally, and emotionally capable of managing and controlling students in those circumstances.

Verbally controlling children in the school system is an element of discipline and classroom management, and no reasonable person could take that stand that the ability to control,

_____

Gracemount position, however, Plaintiff was encouraged to contact the principal of the school to discuss possible ADA accommodations; she was also encouraged to contact her physician to see if any restrictions that would prevent her from qualifying for the position could be addressed.

mange and/or discipline students is not an essential function of a teacher, tutor, or counselor.[18]

Therefore, in so far as Dr. Johnson's doctors agreed that she is incapable of addressing this

essential function due to her disability and would need an accommodation excusing her from

such duties, she is not qualified to perform the function of teacher or counselor with or without a

"reasonable" accommodation.

Prior to terminating her, the school district notified Dr. Johnson that they considered the

ability to verbally control students to be an essential qualification for her job, (ECF #197, Ex.

10), and offered her the option of exploring this restriction with a doctor to see if the restrictions

preventing her from being eligible to teach in a classroom could be revoked.  Dr. Johnson chose

not to explore this possibility.  So long as she is medically unable to verbally control potentially

resistive students, she is not qualified for a position directly dealing with students, as a teacher or

counselor, at this school district.

The accommodations Dr. Johnson has proposed to deal with this restriction:  reducing her

class size, allowing her to work one-on-one in an interventionist position (which does not exist

in the district), or giving her a job as a counselor, are not reasonable accommodations directed at

this aspect of her disability, because in any of these situations, a teacher/counsel will, as a natural

---

[18]

Dr. Johnson also told the OCRC that the students in the classroom she was assigned were
"hard to manage," and that the stress of dealing with them exacerbated her health problems.
(SJ, Ex. 19, p. 1).  However, again, there is no evidence that she had made this argument to
the proper officials at the school district.  Further there is no  evidence that any doctor had
indicated that stress would exacerbate her claimed ADA disability, or that any doctor had
recommended restrictions based on stress levels, which could vary from class to class,
student to student, and day to day.   Further, if avoiding the stress of dealing with "hard to
manage" students were a required accommodation, no reasonable person could find that
she was qualified with or without accommodations to teach or counsel K-8 students in an
urban public school.

result and requirement of their position, be required to verbally control resistive behavior in children.  Employing a teacher who is admittedly incapable of maintaining control of her students verbally without violating her own ADA restrictions would create an unsafe environment for the teacher and for the students.   This is true whether the employee was teaching a full class, a reduced class, or even counseling an individual student.  Being able to verbally maintain control of students is an essential element of any position that deals directly with the children, therefore, the proposed accommodations suggested by Dr. Johnson are not reasonable accommodations for her disability.   Thus, the claim for failure to accommodate on this basis must be dismissed.

III.  <u>Discriminatory Discharge</u>

In order to establish a prima facie case of disability related discriminatory discharge, a Plaintiff must show: (1) that she is disabled; (2) that she was otherwise qualified for the position, with or without reasonable accommodation; (3) that she suffered an adverse action; (4) that her employer knew or had reason to know of her disability; and, (5) she was replaced or the job remained open.

As set forth in greater detail above, because of the restrictions Dr. Johnson claimed were necessary to address her alleged disability (specifically the restriction against exerting verbal control over resistant students), she was not qualified for her position, with or without a reasonable accommodation.   On this point, Dr. Johnson argues only that, while disciplining children is a necessary qualification for dealing with children, "yelling and shouting" are not. This may well be true.  However, the restrictions set forth in the letters she submitted from her

-19-

doctors do not limit themselves to refraining from "yelling and shouting."  The restrictions

specifically state that Dr. Johnson should not be required to  verbally control resistant behavior

in students that persists after initial warning."  On it face, this restrictions is <u>far</u> broader than a

prohibition against yelling or shouting.  It refers to any form of verbal control, without regard to

volume or intensity.  It is unreasonable to believe that a teacher, counselor, or other school

employee charged with caring for and working with children can maintain control and discipline

among their students if they cannot "verbally control" students beyond giving an initial warning.

Dr. Johnson has proposed no reasonable accommodation that would allow her to perform

the essential element of disciplining and/or maintaining order when dealing with a child or

children who may exhibit resistant behavior, while still addressing the restrictions she and her

doctors claim are medically necessary to address her disability.   Further, no such reasonable

accommodation is apparent to this Court.   In order to ensure that order and control are

maintained in the classroom (or even in any small group or one-on-one student encounters),

there would have to be another person instantly available to step in and enforce order at all times.

This would mean Dr. Johnson would have to have someone sitting in with her during all of her

student contact hours.   An accommodation that requires the employment of two full time

positions to do the job of a single employee is not a reasonable accommodation.  Therefore,

Plaintiff does not satisfy the qualification element of a claim for discriminatory discharge, and

her claim must be dismissed.


**<u>Conclusion</u>**

For the reasons set forth above, Plaintiff's Motion for Reconsideration (ECF #267) is

DENIED, and Defendants' Amended Motion for Summary Judgment (ECF #263) is GRANTED.

Pursuant to Fed. R. Civ. Pro. 56, Plaintiff's First Amended Complaint is hereby dismissed with

prejudice.   Further, Defendants' Motion to Strike Any Statement From Dr. Bray or Any Doctor

Regarding Whether Plaintiff Is Disabled Under Ohio or Federal Law (ECF #272)  is DENIED.

IT IS SO ORDERED.


    /s/Donald C. Nugent
DONALD C. NUGENT
United States District Judge

DATED:  February 5, 2010